# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM WARD, individually and as parent of and next friend to JORDAN WARD,<br><br>and<br><br>JERROLD IRVIN, individually and as parent of and next friend to JORDAN IRVIN,<br><br>  Plaintiffs,<br><br>v.<br><br>TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION,<br><br>  Defendant. | Case No. 2:22-cv-02626-JPM-tmp |

## ORDER DENYING TEMPORARY RESTRAINING ORDER

Before the Court is Plaintiffs' Verified Complaint for Temporary Restraining Order, filed with Shelby County Chancery Court on September 9, 2022. (ECF No. 1-1.) Plaintiffs move the Court to issue a Temporary Restraining Order ("TRO") ordering Defendant to find them eligible to play high school interscholastic football this season, pursuant to 42 U.S.C. § 1983. (ECF No. 1-1 at PageID 16.) Plaintiffs argue in the alternative, in a later pleading, that the Court could issue a TRO on the basis of a violation of Tenn. Code Ann. § 4-5-322(h). (ECF No. 18 at PageID 187.)

Defendant removed the case to federal court on September 19, 2022. (ECF No. 1.) Defendant filed its answer on September 26, 2022. (ECF No. 16.) On that same date,

Defendant filed a Memorandum in Opposition, arguing that Plaintiffs had no chance of success on the merits and that a TRO would therefore be inappropriate. (ECF No. 17.)

For the reasons set forth below, Plaintiffs' motion for a TRO is **DENIED**.

I. **BACKGROUND**

Two high school football players, J.W. and J.I., bring suit, through their guardians, against the Tennessee Secondary School Athletic Association (the "TSSAA"). (ECF No. 1-1.) The TSSAA is a nonprofit voluntary organization of member schools. (ECF No. 15 ¶¶ 2–3.) The organization promulgates standard rules for high school athletic competitions, sets eligibility rules for student athletes, and conducts interscholastic sporting competitions statewide. (Id. ¶ 5.) Its policies are governed by the organization's Constitution and Bylaws. (Id. ¶ 2.) The TSSAA has a legislative council which has the power to amend the Constitution and Bylaws, an Executive Director responsible for interpreting and administering the Bylaws, a Board of Control which can overrule the decisions of the Executive Director, and 18 staff, including the Executive Director. (Id. ¶¶ 3–4.) The TSSAA attempts to achieve three primary objectives through its bylaws: maintaining athletics as "subordinate" to the "primary academic mission of schools," preventing "exploitation of students for athletic purposes," and "fostering fair competition." (Id. ¶ 8.)

Plaintiffs J.W. and J.I. were enrolled in Melrose High School for the 2021–22 football season and "participated as members of the Melrose football team." (ECF No. 1-1 ¶ 16.) Plaintiffs withdrew from Melrose High School due to the school's poor educational environment and safety concerns and enrolled at Kingsbury High School. (Id. ¶ 17–20.) They did not play football at Kingsbury High School. (Id. ¶ 20.)

During the summer, both J.W. and J.I. moved to Fayette County, Tennessee. (Id. ¶ 23.) They then enrolled in St. Benedict at Auburndale ("SBA"), a private school. (Id. ¶ 25.) SBA is a member of the TSSAA. (ECF No. 15 at PageID 64.) The students' new residences are outside of SBA's "territory," with at least one of the students' residence being 23 miles away from SBA, meaning that they are ineligible to participate in high school athletics under the TSSAA's transfer residence provision. (ECF No. 1-1 ¶¶ 23–29; ECF No. 15-1 at PageID 76 (the "territory" of a private school is a 20-mile radius from the school); ECF No. 15-1 at PageID 85 (a transfer student is ineligible to play interscholastic sports at a new school for a 12-month period unless "(1) the old residence is outside the territory of the new school, (2) the new residence is outside the territory of the old school, *and* (3) the new residence is inside the territory of the new school").) Plaintiffs thought they were in compliance with the residence provision due to a "misunderstanding" or "miscommunication." (ECF No. 1-1 ¶ 24.)

To verify a student's eligibility to play interscholastic sports, a "TSSAA-member school coach, athletic director, or principal" must enter information about a student into an online portal. (Id. ¶ 26.) SBA Athletic Director Nick Dressman ("Dressman") entered incorrect information about Plaintiffs into the portal, and as a result they were initially deemed eligible to play football for SBA. (Id. ¶¶ 27–28.) They played the first two games of the season. (Id. ¶ 28.) Dressman self-reported his mistake to the TSSAA. (ECF No. 15-3 at PageID 138.) As a result, the TSSAA deemed Plaintiffs ineligible to play football for SBA on September 2, 2022. (Id. ¶¶ 27, 29.) Dressman submitted a "hardship application" on behalf of J.W. on September 2, 2022. (Id. ¶¶ 32–34.) That application was denied on September 6, 2022. (ECF No. 15-5 at PageID 140.) He did not submit a hardship application for J.I. at that time. (ECF No. 15 ¶ 18.)

3

Plaintiff J.W. was set to be evaluated by the University of Tennessee on the day he was deemed ineligible. (ECF No. 1-1 ¶ 31.) He is a "three-star recruit according to Rivals.com" and has received offers to play at "the University of Mississippi, Michigan, Michigan State, and Kentucky." (Id. ¶ 36.)

Plaintiffs argue that the Court should issue a TRO mandating that the TSSAA allow J.W. and J.I. to play football immediately because the fundamental right to raise and educate one's children under the Fourteenth Amendment is violated by the TSSAA's failure to provide parents a platform to participate in student athlete eligibility determinations. (Id. ¶ 14.) In the alternative, Plaintiffs argue that the TSSAA, as a state actor, owed them additional due process through the Fourteenth Amendment before deeming them ineligible to play football. (Id. ¶ 40.) Plaintiffs assert they "have no remedy that they can independently pursue" because only a TSSAA member school, and not a student's parents, can appeal an eligibility determination. (Id.) Plaintiffs argue that they have a property interest in playing football because they may be able to market their "name[s], image[s], and likeness[es]." (Id. ¶ 15.)

Defendant filed a Motion to Dismiss (ECF No. 13) on September 26, 2022, along with a Memorandum in Support (ECF No. 14), the Affidavit of Mark Reeves ("Reeves") and other supporting documents (ECF No. 15), its Answer to the Complaint (ECF No. 16), and a Memorandum in Opposition to the application for a TRO. (ECF No. 17.) Plaintiffs filed a Memorandum in Support of their request for a TRO on the same day. (ECF No. 18.) An initial hearing on the Motion for a TRO was held on September 27, 2022. (ECF No. 20.) On that date J.W. and J.I. testified credibly, as did their parents. (Id.) Reeves also testified. (Id.)

The Court recessed, and that hearing resumed on October 3, 2022. (ECF No. 23.) Reeves provided additional testimony on that date. (Id.)

During the hearing, Plaintiffs asserted that their motivations for J.W. and J.I. transferring to SBA were entirely based on academic and safety concerns. (ECF No. 20) Plaintiffs testified that their decision to transfer was in no way motivated by athletic considerations. (Id.) Plaintiffs testified that J.W. and J.I. attended classes at both Melrose and Kingsbury that lacked a qualified teacher or substitute teacher, and instead were supervised by "placeholders" who did not administer in-person instruction, and whose primary function was to take roll. (Id.) Plaintiffs testified that Melrose was a dangerous environment, with frequent violent brawls and fights occurring among students and sometimes parents. (Id.) In one such brawl, Jerrold Irvin's car window was broken by fighting students pushing one another up against his car. (Id.) Plaintiffs testified that while admittedly safer than Melrose, Kingsbury still had fights and was overall an unsafe environment. (Id.)

Defendant does not dispute Plaintiffs' assertion that J.W. and J.I. transferred to SBA solely for legitimate academic and safety reasons, and that their transfer was not motivated by athletic considerations. (ECF Nos. 20, 23.) However, Defendant contends that while these considerations may be valid and form a legitimate and well-supported basis for Plaintiffs' decision to transfer, that they do not rise to the level of being an "unforeseen and unavoidable" circumstance justifying the granting of a hardship exception. (ECF Nos. 20, 23.) Specifically, Reeves testified that based on his experiences as a teacher and administrator, he believed that it was foreseeable that J.W. and J.I. would be placed in classes lacking qualified full-time or substitute teachers and that they would witness fights in school or during school-sponsored athletic events. (ECF No. 23.) Defendant asserts that while these

may be legitimate reasons for a parent to transfer their child to a different school, they are not reasons that authorize the TSSAA to exercise its discretion to grant a hardship exception to the eligibility requirements. (Id.; ECF No. 15-1 at PageID 89.)

## II. LEGAL STANDARD

The court may grant a TRO or preliminary injunction "only if specific facts . . . clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); Bredesen v. Rumsfeld, No. 3:05-0640, 2005 WL 2175175, at *5 (M.D. Tenn. Sept. 7, 2005). The Court considers four factors in weighing whether to grant a TRO:

> (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay.

Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991). "When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012) (citing Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009)) (quotation marks omitted).

## III. ANALYSIS

 i. *Likelihood of Success on the Merits*

  a. *The Fourteenth Amendment Right to Raise One's Children is not Implicated*

There is a fundamental right under the Due Process clause of the Fourteenth Amendment to raise and educate one's children. See Meyer v. Nebraska, 262 U.S. 390 (1923);

6

see also Pierce v. Society of Sisters, 268 U.S. 510 (1925).  However, a parent's "right to control [their child's] upbringing and education does not extend so far as to allow him to demand his son be allowed to participate in high school athletics without restriction." Z.H. v. Kentucky High Sch. Athletic Ass'n, 359 F. Supp. 3d 514, 522 (W.D. Ky. 2019).  "It is well-established that students do not have a general constitutional right to participate in extracurricular athletics." Lowery v. Euverard, 497 F.3d 584, 588 (6th Cir.2007).  The parents in this case are not "limited in [their] ability to send [their children] to a private school." Evans v. Kentucky High Sch. Athletic Ass'n, No. CIVA 3:09-CV-953-H, 2010 WL 1643758, at *3 (W.D. Ky. Apr. 20, 2010), aff'd sub nom. Seger v. Kentucky High Sch. Athletic Ass'n, 453 F. App'x 630, 633 (6th Cir. 2011).  Athletic association bylaws regarding athletic eligibility do not to implicate the right to raise one's children.  See Seger 453 F. App'x at 634 (6th Cir. 2011).

If a law or regulation implicates the fundamental right to raise one's children, strict scrutiny is applied.  Seger, 453 F. App'x at 633.  Because no such right is implicated in the instant case, the TSSAA's eligibility decision will only be subject to the "rational basis test." Id. at 634.  Plaintiffs are therefore unlikely to succeed on the merits of this case on the basis of the Fourteenth Amendment right to raise one's children.

  b. *There is No Property Interest Under the Fourteenth Amendment*

The Fourteenth Amendment protects individuals from deprivation of property, including "entitlement[s]," by state actors, without due process of law.  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  Interscholastic athletic associations like the TSSAA may be considered state actors for Fourteenth Amendment Purposes.  See Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001).  The existence of

7

an entitlement giving rise to a property interest is determined by the "nature" and not the "weight" of the interest at stake.  Smith v. Organization of Foster Families, 431 U.S. 816, 841 (1977).

"A clear majority of courts addressing this question in the context of interscholastic or intercollegiate athletics has found that athletes have no legitimate entitlement to participate." Brands v. Sheldon Cmty. Sch., 671 F. Supp. 627, 631 (N.D. Iowa 1987).  Numerous courts have ruled that students have a "mere expectation rather than a constitutionally protected claim of entitlement" in "participating in a single year of interscholastic athletics."  Walsh v. Louisiana High Sch. Athletic Ass'n, 616 F.2d 152, 159 (5th Cir. 1980); see also Albach v. Odle, 531 F.2d 983, 984–85 (10th Cir. 1976) ("Participation in interscholastic athletics is not a constitutionally protected civil right").  There is no entitlement to participate in interscholastic athletics in the Sixth Circuit or the State of Tennessee.  See Hamilton v. Tennessee Secondary Sch. Athletic Ass'n, 552 F.2d 681, 682 (6th Cir. 1976) (holding that a Memphis student could not prevail on a § 1983 claim challenging the TSSAA's transfer student policies because participation in interscholastic athletics is outside of the protection of due process); see also Tennessee Secondary Sch. Athletic Ass'n v. Cox, 425 S.W.2d 597, 602 (Tenn. 1968) (describing participation in high school athletics in Tennessee as "a mere privilege"); Brindisi v. Regano, 20 Fed. Appx. 508, 510 (6th Cir. 2001) (holding that there is "neither a liberty nor a property interest in interscholastic athletics subject to due process protection").

Plaintiffs argue that the United States Supreme Court has altered this equation through the Alston decision.  See generally Nat'l Coll. Athletic Ass'n v. Alston, 141 S.Ct. 2141 (2021).  That case found that the National College Athletic Association ("NCAA") has

8

monopsony power over "student athletes['] . . . labor." Id. at 2156.  "The NCAA's rules fixing wages" were therefore found to be anticompetitive and a violation of antitrust law.  Id. at 2157.  That decision did not allow colleges to provide student athletes with "professional-level cash payments."  Id. at 2153.  Rather, it "enjoined only restrictions on education-related compensation or benefits that may be made available *from conferences or schools*."  Id. at 2164 (quotation marks omitted) (emphasis in original).  This ruling makes it possible for states to pass "laws that allow college athletes to earn money from the use of their name, image and likeness."  See Leah Nylen and Juan Perez Jr., Supreme Court Rules in Favor of Athletes in NCAA Compensation Case, Politico, June 21, 2021, https://www.politico.com/news/2021/06/21/supreme-court-ncaa-antitrust-ruling-495319 (last accessed 9/21/2022).

Plaintiffs admit that Tennessee "has yet to evaluate [this] issue."  (ECF No. 1-1 ¶ 37.)  The "weight" of the interest Tennessee students have in participating in high school sports may have been altered in some small way by the Alston decision, but its "nature" has not been altered.  Smith, 431 U.S. at 841.  Plaintiffs' argument that they have a property right to participate in interscholastic athletics will be subject to rational basis review.  Seger, 453 F. App'x at 633.  Plaintiffs are therefore unlikely to succeed on the merits of this case by arguing that they hold an entitlement.

  ii. *Tenn. Code Ann. § 4-5-322(h) Does Not Apply in This Case*

Plaintiffs argue in the alternative that the Court should issue a TRO because the decision of the TSSAA was "arbitrary and capricious" under the meaning of Tenn. Code Ann. § 4-5-322(h).  (ECF No. 18 at PageID 187.)  Tenn. Code Ann. § 4-5-322(h) provides redress to petitioners when an "agency" of the state has violated their constitutional rights, acted

unlawfully, or abused its discretion in issuing administrative findings or decisions. Tenn. Code Ann. § 4-5-322(h). The TSSAA is a "voluntary association of member schools" and a nonprofit organization, not a state agency.[1] (ECF No. 16 at PageID 143.) The courts have no jurisdiction to "interfere in the internal affairs of a voluntary high school athletic association. Cox, 415 S.W.2d at 599 (holding that courts could not intervene with the TSSAA to alter student athlete transfer eligibility determinations.) Tenn. Code Ann. § 4-5-322(h) is inapplicable in the instant case.

    c. *Other Factors in Determining Whether to Grant a TRO*

In this case, Plaintiffs seek a TRO "on the basis of a potential constitutional violation." Obama for Am. v. Husted, 697 F.3d at 436. For that reason, likelihood of success on the merits is likely determinative. (Id.) "Because athletic seasons are usually completed before either a final decision on the merits by the trial court or appellate review, a [trial] court's ruling granting or denying a temporary injunction will typically, as a practical matter, decide the issue of whether a student-athlete competes." NCAA v. Lasege, 53 S.W.3d 77, 83 (Ky. 2001). The Court will therefore briefly address the remaining factors in determining whether granting a TRO is appropriate in the instant case.

    1. *Irreparable Harm*

"While the injury may seem trivial . . . it is no doubt irreparable." Z.H., 359 F. Supp. 3d at 525. The ability of these students to "compete on the college level will be greatly diminished if [they are] unable to play football this season." Rhodes v. Ohio High Sch.

---

[1] While the TSSAA's regulatory enforcement action is "state action" for purposes of the Fourteenth Amendment and § 1983 claims, TSSAA is not a state agency under Tennessee law. Brentwood Academy, 531 U.S. 288; Tenn. Code Ann. § 4-5-102(a) ("'Agency' means each state board, commission, committee, department, officer, or any other unit of state government authorized or required by any statute or constitutional provision to make rules or to determine contested cases").

Athletic Ass'n, 939 F. Supp. 584, 592 (N.D. Ohio 1996). Therefore, in this case there is irreparable harm to Plaintiffs.

### 2. *Substantial Harm to Others*

There is "potential for great harm on both sides of the equation" in this case, as the determination of player eligibility has an impact on "programs across the state" as "games, seasons, and even championships" are changed. Z.H., 359 F. Supp. 3d at 525. On the other hand, the TSSAA has an interest in having its bylaws upheld, as do players across the state. (Id.) The TSSAA also has a substantial interest in "create[ing] a more even playing field." Because the two players started on the football team this year, there is no worry about "displac[ing] another student athlete from participation." Rhodes, 939 F. Supp. at 593. There is little risk of substantial harm to others in the instant case.

### 3. *The Public Interest*

"The public has both an interest in seeing the [athletic association's] Bylaws upheld and seeing them applied properly." Z.H., 359 F. Supp. 3d at 525–26. The TSSAA's interest in "upholding the rules" in a consistent fashion is in the public interest. Rhodes, 939 F. Supp. at 593. Finding in favor of the Defendant would be in the public interest.

## IV. Conclusion

While the other three factors are mixed, the likelihood of success on the merits is the "determinative factor" in this case. Obama for Am. v. Husted, 697 F.3d at 436. It is highly unlikely that this case would succeed on the merits.

For the reasons set forth above, Plaintiffs' motion for a TRO is **DENIED**.

**SO ORDERED**, this 5th day of October, 2022.

                                                  s/ Jon P. McCalla
                                                  JON P. McCALLA
                                                  UNITED STATES DISTRICT JUDGE